UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TRACY LEE COHN,

                              Plaintiff,

          - against-

KEYSPAN CORPORATION, LONG ISLAND
POWER AUTHORITY, NATIONAL GRID
CORPORATE SERVICES, LLC, DONATO
BARRUCCO, CHRISTOPHER BISHOP,
CAROL BUFORD, TIMOTHY GEWERT,
ANNA L'ABBATE, MARILEE ROBERTSON,
and JANE DOES AND JOHN DOES, the latter
being those Defendants unknown to Plaintiff,
all sued in their individual and professional
capacities,

                              Defendants.
--------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
**09 CV 2477 (SJF)(AKT)**

On June 10, 2009, plaintiff Tracy Lee Cohn ("plaintiff") filed this action against KeySpan

Corporation ("KeySpan" or "KeySpan Corporation"), Long Island Power Authority ("LIPA"),

National Grid Corporate Services, LLC ("National Grid"), Donato Barrucco ("Barrucco"),

Christopher Bishop ("Bishop"), Carol Buford ("Buford"), Timothy Gewert ("Gewert"), Anna

L'Abbate ("L'Abbate"), Marilee Robertson ("Robertson"), and "Jane Does and John Does" ("the

Doe defendants") (collectively, "defendants"), alleging, *inter alia*, employment discrimination

based on disability, a hostile work environment and retaliation in violation of the Americans with

Disabilities Act, ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act of 1973 ("the

Rehabilitation Act"), 29 U.S.C. § 792, *et seq.*, and the New York State Executive Law § 296

("NYSHRL"). Defendants now move pursuant to Rule 21 of the Federal Rules of Civil

1

Procedure to dismiss the complaint as against KeySpan and LIPA; and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") to dismiss the complaint in its entirety. For the reasons stated herein, defendants' motion is granted in part and denied in part.

I.     Background

   A.     Factual Background[1]

      1.     The Parties

Since April 1998, plaintiff has been employed by KeySpan, LIPA and/or National Grid (collectively, "the Utility defendants"). (Complaint [Compl.], ¶ 27). Since July 16, 1998, plaintiff has been employed by the Utility defendants as a customer service representative. (Compl., ¶ 17). At all relevant times, Barrucco, Bishop, Buford, Gewert, L'Abbate and Robertson (collectively, "the individual defendants") were employed by the Utility defendants in a supervisory capacity and were plaintiff's supervisors in the customer relations department. (Compl., ¶¶ 19-25).

Plaintiff alleges that she is disabled as a result of a spinal injury, i.e. narrowing of discs at L4 and L5 and degenerative discs, she sustained on April 15, 1999 when she slipped and fell at a customer's home while she was working as a meter reader for the Utility defendants ("the slip and fall accident"). (Compl., ¶¶ 13, 28-30). At plaintiff's request, she was placed on light duty following the slip and fall accident. (Compl., ¶ 28).

Plaintiff alleges that although she obtained a prescription for the use of a lumbar

_____

[1] The factual allegations are taken from the complaint and are assumed to be true for purposes of this motion only. They do not constitute findings of fact by the Court.

2

supporting chair at work on January 5, 2001, the supervisor to whom she submitted her request for the chair denied her request. (Compl., ¶¶ 31-32).

On January 31, 2001, plaintiff fell from her office chair ("the chair accident"), as a result of which she sustained a "serious injury." (Compl., ¶ 33). Following the chair accident, plaintiff remained out of work until March 12, 2001, at which time she returned to work for half days for three (3) weeks. (Compl., ¶ 34). Plaintiff returned to full duty at work on April 9, 2001. (Compl., ¶ 35).

In or about June 2005, plaintiff left work to go to the emergency room after suffering "sharp pains in her back region." (Compl., ¶ 36). Although plaintiff returned to work the following day, she again left work via an ambulance, which transported her back to the emergency room, as a result of "severe pain in her back." (Compl., ¶ 37). Plaintiff was diagnosed with "three damaged discs," for which she underwent pasterolumbar interbody fusion surgery ("the surgery") on July 19, 2005, following which she was hospitalized for two (2) days and bedridden for twenty-one (21) days. (Compl., ¶¶ 38-39, 44). Plaintiff alleges that the surgery limited her ability to sit for long periods of time and to perform tasks requiring bending or lifting. (Compl., ¶ 40). However, plaintiff denies that her purported disability prevents her in any way from performing the essential duties of a customer service representative. (Compl., ¶ 42).

In or about September 2005, plaintiff "submitted the required medical documents in order to receive reasonable accommodations [at work] as a result of her surgery." (Compl., ¶ 44). Upon her return to work in September 2005, plaintiff was given a reasonable accommodation, insofar as she was permitted to take seven (7) to ten (10) minute breaks four (4) times per day to

3

stretch and manipulate her back and such time would be excluded from her "availability status" on her performance evaluation. (Compl., ¶¶ 46, 63).

Plaintiff alleges that soon after the surgery, at the direction of Robertson, she submitted a Family Medical Leave Act ("FMLA") application to KeySpan. (Compl., ¶ 43). Plaintiff missed work from September 21, 2005 through October 20, 2005. (Compl., ¶ 45). According to plaintiff, "[u]pon returning to work, [she] supplied [KeySpan] with a doctor's letter explaining her absence." (Id.).

Plaintiff further alleges that as a result of the surgery, she missed the following periods from work: from January 19, 2006 through January 26, 2006; from April 24, 2006 through April 26, 2006; and from June 6, 2006 through June 9, 2006. (Compl., ¶¶ 47-49). According to plaintiff, upon returning to work after each absence, she supplied KeySpan with a doctor's letter explaining her absence. (Compl., ¶¶ 47-49).

On or about August 2, 2006, Jane Sciacca, from KeySpan, advised plaintiff that her request for FMLA accommodations had been approved, (Compl., ¶ 50), "contingent upon [plaintiff] having met the requisite hours worked." (Affidavit of James G. Ryan [Ryan Aff.], Ex. B; Declaration of Linda M. Cronin [Cronin Decl.], Ex. B).[2] In addition, Sciacca advised plaintiff that she was still required to provide medical documentation for each illness-related absence

---

[2] The following documents were filed by plaintiff with her EEOC charge in the administrative proceeding and, thus, for the reasons set forth below, are properly considered on this motion to dismiss: (1) a letter from Robertson to plaintiff dated August 29, 2006; (2) a "Monthly Performance Feedback Form" dated October 9, 2006; (3) a "Days Off Request Form" dated November 13, 2006; (4) a "Quality Assurance Form;" and (5) three (3) e-mails dated August 2, 2006, September 20, 2006 and September 26, 2006, respectively. Moreover, both parties submit these same documents in support of, and in opposition, to the instant motion and, thus, there is no prejudice to either side in considering these documents on this motion.

from work. (Ryan Aff., Ex. B; Cronin Decl., Ex. B).

During a meeting on August 24, 2006, attended by plaintiff, Robertson and a union representative Connie Fritzlo ("Fritzlo"), plaintiff was advised that her use of sick leave during the previous twelve (12) month period had been excessive, insofar as she was absent from work due to illness from September 21, 2005 through October 20, 2005, on December 2, 2005, from December 29, 2005 through December 30, 2005, from January 19, 2006 through January 26, 2006, from April 24, 2006 through April 26, 2006 and from June 6, 2006 through June 9, 2006, and a verbal reprimand was issued based upon her unavailability for work. (Ryan Aff., Ex. B; Cronin Decl., Ex. B). Plaintiff was also advised that her "[f]ailure to make an immediate and sustained improvement in [her] overall attendance profile [would] result in the continuance of progressive disciplinary action up to, and including, termination of employment" and was encouraged to utilize KeySpan's Health Services and/or Long Island Employee Assistance Program. (Ryan Aff., Ex. B; Cronin Decl., Ex. B).

On September 14, 2006, at approximately 9:23 a.m., when plaintiff was returning from her "normal backstretch walk," she experienced "severe pain" in her back radiating down her leg. (Compl., ¶ 51). Since Barrucco, plaintiff's immediate supervisor that day, was unable to speak with plaintiff, plaintiff contacted another supervisor, Shirley Josephs ("Josephs"), and informed her that she "could no longer continue to work." (Compl., ¶ 53). According to plaintiff, with Josephs's permission, she signed out of work at 10:10 a.m. and went directly home to bed. (Id.). Plaintiff alleges that Barrucco called her at home at 1:30 p.m. that day and threatened to dock her salary for the day unless she immediately returned to work because he did not believe her claim of back pain. (Compl., ¶ 54). According to plaintiff, Barrucco also threatened to address the

5

matter with plaintiff's union and KeySpan's management. (Compl., ¶ 55). Thereafter, plaintiff went to her doctor, who took x-rays revealing that her spine had not completely fused together causing her pain. (Compl., ¶ 56). The doctor gave plaintiff an orthopedic device to stimulate bone growth. (Id.).

Upon returning to work on September 18, 2006, plaintiff provided Robertson with a doctor's note explaining her absence, to which Robertson responded: "We do not care about the note." (Compl., ¶ 60). On that date, plaintiff also met with Barrucco, Bishop and Fritzlo, at which time she was advised that defendants would no longer accommodate her back stretches and walks into her schedule and that, although she would be permitted to continue taking such breaks, "her time away from her workstation * * * [would] now be factored into her unavailability status resulting in possible disciplinary action should she fail to reach her goals." (Compl., ¶¶ 57-58, 62). According to plaintiff, at the meeting, Bishop also refused to acknowledge the medical report explaining her three (3) day absence from work. (Compl., ¶ 61). Plaintiff alleges that defendants' failure to accommodate her disability was taken in retaliation for her utilization of sick time on September 14, 2009 and that, as a result, she was unable to meet her "conformance level," i.e., the expected standard of time during which a customer service representative spends on the telephone during his or her shift, for which she was disciplined and threatened with the termination of her employment. (Compl., ¶¶ 59, 64, 68).

Plaintiff alleges that in or about September 2006, she complained to Steven Stone ("Stone") at the New York State Department of Labor ("NYSDOL") about KeySpan's refusal to pay her for two (2) days of sick leave. (Compl., ¶ 65). On September 19, 2006, plaintiff again met with Barrucco and Bishop, who informed her that she would still not be paid for the two (2)

6

days of sick leave. (Compl., ¶ 66). Plaintiff further alleges that during that meeting, Bishop informed her that he would no longer allow her to take time off from answering telephones so that she would perform her back stretches. (Compl., ¶ 67).

Plaintiff alleges that on September 20, 2006, while she was returning from her back stretch and walk, Barrucco "interrogated" her as to why she was not at her workstation. (Compl., ¶ 69). Plaintiff also received an e-mail from Barrucco that day advising her, *inter alia*, that she must inform him or, if he was unavailable, another supervisor whenever she left her workstation for back stretches. (Compl., ¶ 72; Ryan Aff., Ex. B; Cronin Decl., Ex. B). Plaintiff alleges that subsequent to that date, Barrucco, Bishop and Robertson would follow her during her breaks, stretches, lunch hour and whenever she would take "AUX3" status, i.e. time off from answering the telephones, including during bathroom breaks. (Compl., ¶ 74).

By e-mail dated September 26, 2006, Barrucco advised plaintiff that he noticed that some of her back stretches extended beyond the six (6) to eight (8) minute time period listed on her medical note and that plaintiff was to adhere to that time period. (Ryan Aff., Ex. B; Cronin Decl., Ex. B). Barrucco further advised plaintiff that her conformance numbers for the previous week had "fallen short" and suggested that plaintiff "customize [her] lunch schedule and split it up for 2- 15 min breaks and 1- 30 min break to accommodate the extra time [she] needed for [her] stretching * * *." (Ryan Aff., Ex. B: Cronin Decl., Ex. B). Barrucco further noted that "[l]ooking back on [plaintiff's] previous times before procedures * * * changed it appear[ed] [plaintiff] ha[d] used 4 to 5 AUX times per day of 6-8 min to excersise [sic] [her] back and scored a 100% [conformance rating] * * *." (Ryan Aff., Ex. B; Cronin Decl., Ex. B).

Plaintiff alleges that on October 2, 2006, she complained to L'Abbate about the refusal to

7

accommodate her disability and to pay her for the two (2) days of sick leave, but L'Abbate ignored her complaints and informed her that she would not be paid for the two (2) days in question. (Compl., ¶ 75).

Plaintiff further alleges that on October 5, 2006, she was forced "to waste" a vacation day because of the stress and harassment at work by Barrucco. (Compl., ¶ 76).

On October 9, 2006, plaintiff again complained to L'Abbate about the harassing conduct of, and hostile work environment caused by, Barrucco, claiming, *inter alia*, that Barrucco had reprimanded her for using the wrong color paper for an "appeal," although other employees were using the same color paper due to the unavailability of the correct color of paper. (Compl., ¶ 78). According to plaintiff, she advised L'Abbate at that time that she intended to file harassment charges against Barrucco through her union and that Barrucco's harassment was affecting her work performance. (Compl., ¶ 79). On that same date, plaintiff received a "Monthly [Performance] Feedback Form" ("MPF" Form) from Barrucco, indicating for the first time, *inter alia*, that plaintiff needed to improve her conformance and skills. (Compl., ¶ 80; Ryan Aff., Ex. B; Cronin Decl., Ex. B). The action plan set forth in that MPF Form indicates that in order to accommodate plaintiff's back condition, Barrucco offered to customize plaintiff's lunch schedule by allowing two (2) fifteen (15)-minute and one (1) thirty (30)-minute breaks for back stretches. (Ryan Aff., Ex. B; Cronin Decl., Ex. B).

On October 19, 2006, plaintiff again spoke with Stone from the NYSDOL about defendants' refusal to accommodate her disability. (Compl., ¶ 81).

On November 13, 2006, plaintiff submitted a "Days Off Request Form" ("DOR" Form) requesting two (2) hours of vacation time on November 17, 2006, which was approved by

Barrucco. (Ryan Aff., Ex. B; Cronin Decl., Ex. B).

On November 20, 2006, plaintiff attended a meeting with Gewert, Dan Cavanaugh ("Cavanaugh"), Stephanie McConnell ("McConnell") and two (2) union representatives, Margaret Brady ("Brady") and Robin Rodriguez ("Rodriguez"), to discuss her complaints of harassment against Barrucco and Bishop that she filed with the NYSDOL and her request to be reassigned to a different supervisor. (Compl., ¶¶ 82-84). Following that meeting, plaintiff accepted a transfer from the Melville Customer Service Center ("Melville CSC") to the Roslyn Customer Service Center ("Roslyn CSC"). (Compl., ¶ 86).

Plaintiff alleges that on December 8, 2006, while she was taking an examination for an "SSO Operator" position in Hauppauge, which had been approved and scheduled by Bishop, she received a telephone call from Ron McGriskin ("McGriskin"), Bishop's assistant, inquiring as to her whereabouts since she had not reported to the Melville CSC. (Compl., ¶ 87). According to plaintiff, as a result of the time she spent talking to McGriskin during the timed examination, the loss of concentration and the stress she experienced as a result of the call, she failed the examination. (Id.). Plaintiff alleges that had she passed the examination and been promoted to an "SSO Operator" position, she would have received an increase in salary of a minimum of twenty thousand dollars ($20,000.00) a year. (Compl., ¶ 88).

Plaintiff alleges that on January 9, 2007, she again submitted a request and prescription for an orthopedic chair, which was approved on January 17, 2007. (Compl., ¶¶ 89, 91). Although plaintiff was given a catalog from which to choose an ergonomic chair for her needs on January 31, 2007, she did not receive the chair until March 6, 2007. (Compl., ¶¶ 92, 94).

On or about March 13, 2007, plaintiff filed a charge of discrimination with the United

States Equal Employment Opportunity Commission ("EEOC"), alleging that since September 14, 2006, KeySpan discriminated against her in her employment based upon her disability, and retaliated against her, in violation of the ADA. (Compl., ¶¶ 7-8). Specifically, plaintiff complained of KeySpan's failure to pay her for two (2) days that she took as sick leave in September 2006; the subsequent refusals to accommodate her disability, retaliation and harassment by Barrucco, Bishop, Robertson and others; and L'Abbate's failure to act on her complaints of harassment through October 2006. (Affidavit of James G. Ryan [Ryan Aff.], Ex. B). The EEOC issued a right-to-sue letter on June 29, 2007 without rendering a determination on her charge. (Compl, ¶ 9; Ryan Aff., Ex. C).

Plaintiff alleges that as of January 2008, defendants refused to give her overtime work that she requested, in further retaliation for her complaints of harassment, as a result of which "her income [was decreased] by approximately $15,000 per annum." (Compl., ¶ 95).

Plaintiff further alleges that on February 26, 2009, she was suspended for having shortages and/or overages in her cash drawer. (Compl., ¶ 96). According to plaintiff, she was the only employee suspended, notwithstanding that "other similarly situated employees" committed "similar acts." (Compl., ¶¶ 96-97).

In addition, plaintiff alleges that the Utility defendants have condoned derogatory comments being made about her in instant messages between her supervisors and co-workers, which have caused her embarrassment, humiliation and stress. (Compl., ¶ 98).


B.     Procedural History

On September 27, 2007, plaintiff filed a complaint against KeySpan, LIPA, National Grid

10

and the Doe defendants in this Court, which was assigned to the Honorable Leonard D. Wexler, United States District Judge, under docket number 07-cv-4075 ("the 2007 action"). In the amended complaint filed in the 2007 action on January 25, 2008, plaintiff asserted causes of action, *inter alia*, alleging employment discrimination based on disability and retaliation in violation of the ADA; conspiracy in violation of 42 U.S.C. §§ 1983 and 1985(2); and violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617, the Fair Labor Standards Act and the Sarbanes-Oxley Act, 18 U.S.C. §§ 1514A, *et seq.* By order dated December 16, 2008, Judge Wexler, *inter alia*: (1) denied plaintiff's application pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for an extension of time within which to serve defendants with legal process; (2) granted the request of Ruth M. Pollack, Esq. to be relieved as plaintiff's counsel; and (3) dismissed the 2007 action "without prejudice with right to re-file a new action." Although the December 16, 2008 final order was entered on the civil docket on December 23, 2008, and the 2007 action was terminated at that time, final judgment was not entered in the 2007 action until June 15, 2009.

On June 10, 2009, plaintiff, represented by new counsel, commenced this action against defendants alleging, *inter alia*: (1) employment discrimination based on disability and failure to make reasonable accommodations to plaintiff's disability in violation of Sections 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A) (first cause of action), (Compl., ¶¶ 100-111), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (third cause of action), (Compl., ¶¶ 119-130); (2) retaliation in violation of the ADA (second cause of action), (Compl., ¶¶ 112-118); (3) a hostile work environment (fourth cause of action), (Compl., ¶¶ 131-139); and (4) employment discrimination based on disability in violation of the NYSHRL (fifth cause of action), (Compl.,

11

¶¶ 140-143). Plaintiff seeks, *inter alia*, compensatory and punitive damages. (Compl., pp. 28-29).

Defendants now move pursuant to Rule 21 to dismiss the complaint as against KeySpan and LIPA, and pursuant to Rule 12(b)(6) to dismiss the complaint in its entirety.

## II.  DISCUSSION

### A.  Rule 21

Initially, defendants seek dismissal of plaintiff's claims against KeySpan and LIPA pursuant to Rule 21 of the Federal Rules of Civil Procedure on the basis that those defendants are not proper parties to this action since plaintiff was never employed by them. According to defendants, plaintiff's employment discrimination claims are "based on her alleged disability while employed at defendant National Grid and its predecessor [KeySpan Corporate Services LLC ("KCS")]." (Memorandum of Law in Support of Defendants' Motion to Dismiss [Def. Mem.], p. 4; Affidavit of James Suridis [Suridis Aff.], ¶ 1).

Rule 21 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 21 allows a court "to delete parties [from an action] that have no connection to the claims asserted," Jiao v. First International Travel, Inc., No. 03 Civ. 0165, 2004 WL 1737715, at * 5 (S.D.N.Y. Aug. 4, 2004) (quoting Glendora v. Malone, 917 F.Supp. 224, 227 n. 3 (S.D.N.Y. 1996)), and "is a remedy to be used when there is clearly no right or basis of relief from a party." Barrundia v. City of New York, No. 84 Civ. 6801, 1988 WL 96063, at * 4 (S.D.N.Y. Sept. 8, 1988). It is within the sound discretion of the Court whether to add or drop a party pursuant to Rule 21. See

12

City of Syracuse v. Onondaga County, 464 F.3d 297, 308 (2d Cir. 2006).

In deciding a motion to drop a party pursuant to Rule 21, the Court may consider affidavits filed by the defendants challenging the allegations against them in the complaint. Jiao, 2004 WL 1737715, at * 5. If the plaintiff fails to respond to such affidavits, the Court may accept the assertions contained therein as true in order to determine whether those defendants are proper parties to the action. Id.

In support of their contention, defendants submit: (1) an affidavit from James Suridis, the payroll manager in National Grid's employee services department, indicating that at all relevant times, plaintiff was, and is, an employee of National Grid and its predecessor KCS and was never employed by KeySpan Corporation, "the former holding company for all KeySpan entities," (Suridis Aff., ¶¶ 1, 3-4); and (2) an affidavit from Wanda Hord, LIPA's director of human resources and administration, indicating that "to the best of [her] knowledge," based upon her review of LIPA's employment records, plaintiff was never employed by LIPA, which "is a corporate municipal instrumentality and political subdivision of New York State [that] has no ownership interest in KeySpan Corporation or its successor, National Grid."[3] (Affidavit of Wanda Hord [Hord Aff.], ¶ 1). If plaintiff was, in fact, never employed by KeySpan Corporation or LIPA, plaintiff would have no basis to assert her employment discrimination and retaliation claims against those defendants.

In opposition, plaintiff submits certain employment documents indicating, *inter alia*, that

---

[3] The affidavits of Suridis and Hord appear somewhat inconsistent, insofar as Hord indicates that National Grid is, in fact, the successor of KeySpan Corporation, whereas Suridis indicates that KeySpan Corporation was merely the holding company of KCS, the KeySpan entity which was National Grid's predecessor. Thus, the affidavits themselves raise a question regarding whether KeySpan Corporation, the named defendant herein, is a proper party to this action.

she was an employee of "KeySpan," and/or "KeySpan Corporate Services LLC," (Exs. C-G), as well as a copy of her current employee identification badge containing the names of both LIPA and National Grid. (Ex. G; Plf. Aff., ¶ 6). Those exhibits, particularly when considered in connection with the apparent inconsistency between the Suridis and Hord affidavits regarding which KeySpan entity was the predecessor to National Grid as plaintiff's employer, are sufficient at this early stage in the litigation to preclude dropping KeySpan Corporation and LIPA as defendants in this action. If, following discovery, it is demonstrated that KeySpan Corporation and/or LIPA, in fact, have no connection to plaintiff's employment discrimination and retaliation claims, those defendants may renew their motion to drop them from this action pursuant to Rule 21 prior to trial.

B.     Rule 12(b)(6)

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Arista Records, LLC v. Doe 3, ___ F.3d ___, 2010 WL 1729107, at * 8 (2d Cir. Apr. 29, 2010)(accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders

14

'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, 2010 WL 1729107, at * 9.

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

Since the EEOC right-to-sue letter is attached to the complaint, it is properly considered on this motion. See Gregory v. Daly, 243 F.3d 687 (2d Cir. 2001). Moreover, since the EEOC

15

charge is a public document filed in an administrative proceeding, and is integral to plaintiff's

ADA claims, the charge, together with the documents accompanying the charge filed in the

EEOC proceeding, are also properly considered on this motion. See Morris v. David Lerner

Associates, 680 F.Supp.2d 430, 436 (E.D.N.Y. 2010); Muhammad v. New York City Transit

Authority, 450 F.Supp.2d 198, 204-205 (E.D.N.Y. 2006); see also James v. Federal Reserve

Bank of New York, No. 01-cv-1106, 2005 WL 1889859, at * 1 n. 2 (E.D.N.Y. Aug. 8, 2005)

(noting that a court may take judicial notice of an EEOC charge).[4]


B.    Individual Liability under the ADA and Rehabilitation Act

Individuals may not be sued in their individual or personal capacity under the ADA or

Rehabilitation Act. See Spiegel v. Schulmann, ___ F.3d ___, 2010 WL 1791417, at * 5 (2d Cir.

May 6, 2010); Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003); Garcia v. S.U.N.Y.

Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). Moreover, there is no

cause of action seeking monetary damages for employment discrimination under the ADA or

Rehabilitation Act against a supervisor in his or her "official" or "representative" capacity. See,

e.g. Fox v. State University of New York, 497 F.Supp.2d 446, 451 (E.D.N.Y. 2007) (citing cases

dismissing official capacity claims under the ADA as redundant to claims against the employer

since the plaintiff already had a cause of action against the employer); Lane v. Maryhaven Center

of Hope, 944 F.Supp 158, 163 (E.D.N.Y, 1996) (holding that there is no cause of action for

---

[4] To the extent the affidavits and other exhibits submitted by the parties in support of, or in
opposition to, defendants' motion are submitted with respect to the branch of defendants' motion
seeking dismissal pursuant to Rule 12(b)(6), as opposed to the branch of defendants' motion
seeking to drop plaintiff's claims against KeySpan and LIPA pursuant to Rule 21, those
documents have not been considered in determining this branch of defendants' motion.

employment discrimination under the ADA against a supervisor in his "official" or representative capacity). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's ADA and Rehabilitation Act claims against the individual defendants and Doe defendants is granted and plaintiff's ADA claims are dismissed with prejudice as against the individual defendants and Doe defendants.

### C.    ADA Claims

Exhaustion of administrative remedies and the timely filing of a complaint with the EEOC are preconditions to filing an ADA action in federal court. See Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004); Chesney v. Valley Stream Union Free School District No. 24, No. 05 Civ. 5106, 2009 WL 1405203, at * 7 (E.D.N.Y. May 14, 2009). However, since the timeliness requirement of the ADA is an affirmative defense "analogous to a statute of limitations," McPherson v. New York City Department of Education, 457 F.3d 211, 214 (2d Cir. 2006)[5] (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996)), it is subject to the equitable doctrines of tolling and estoppel. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393-398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that the statutory time requirements of Title VII are subject to waiver, estoppel and equitable tolling); Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003). As an affirmative defense, defendants bear the burden of establishing the plaintiff's failure to timely

---

[5] The ADA adopts the procedures for Title VII suits, 42 U.S.C. § 12117(a), and, thus, cases analyzing the filing requirements of Title VII are also applicable to ADA actions.

exhaust his administrative remedies. See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); German v. Pena, 88 F.Supp.2d 216, 219-220 (S.D.N.Y. 2000). Once defendants meet their burden, the plaintiff must plead and prove "facts supporting equitable avoidance of the defense." Bowden, 106 F.3d at 437.

The ADA requires that a claim be filed in federal court within ninety (90) days of the plaintiff's receipt of a right-to-sue letter from the EEOC. See 42 U.S.C. § 12117(a) (adopting the ninety (90)-day limitations period set forth in Title VII, 42 U.S.C. § 2000e-5(f)(1), for the ADA); Johnson v. St. Barnabas Nursing Home, No. 09-0069-cv, 2010 WL 744357, at * 1 (2d Cir. Mar. 5, 2010). "While the 90-day rule is not a jurisdictional predicate, 'in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.'" Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146 (2d Cir. 1984) (quoting Rice v. New England College, 676 F.2d 9, 11 (1ˢᵗ Cir. 1982)); see also Celestine v. Cold Crest Care Center, 495 F.Supp.2d 428, 432 (S.D.N.Y. 2007) (holding that although the ninety-day period is subject to extension for equitable reasons, "the statutory time limits imposed by Congress are not to be taken lightly."); Toner v. Suffolk County Water Authority, 220 F.R.D. 20, 21 (E.D.N.Y. 2004) (holding that the ninety (90)-day limitation period is a strict one). The ninety (90)-day limitation period imposed by the ADA "is not merely a suggestion; it is a statutorily-imposed requirement necessitating strict adherence, subject only to very narrow exceptions." Celestine, 495 F.Supp.2d at 432.

"Absent sufficient evidence to the contrary, it is presumed that a plaintiff received his or her right to sue letter three days after its mailing." St. Barnabas, 2010 WL 744357, at * 1; Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996). A plaintiff's unsupported

18

allegation that he or she received the right-to-sue letter on a later date is insufficient to rebut the applicable "three-day presumption of receipt." St. Barnabas, 2010 WL 744357, at * 1. In addition, it is presumed that a notice mailed by a governmental agency, such as the EEOC, was mailed on the date shown on the document. Johnson v. Verizon, No. 08 Civ. 11373, 2009 WL 3000080, at * 5 (S.D.N.Y. Sept. 21, 2009). Accordingly, it is presumed that plaintiff received her right-to-sue letter, which was mailed on June 29, 2007, on July 2, 2007. Therefore, plaintiff was required to file her ADA claims in this Court on or before October 1, 2007 (September 30, 2007 being a Sunday).[6]

Plaintiff timely filed her ADA claims in the 2007 action four (4) days prior to the expiration of the ninety (90) day period, i.e., on September 27, 2007. However, Judge Wexler subsequently dismissed the 2007 action without prejudice by order dated December 16, 2008, which was entered on the civil docket on December 23, 2008. The timely filing of a complaint subsequently dismissed without prejudice does not toll or suspend the ninety (90)-day limitations period. Copeland v. Rosen, 25 Fed. Appx. 17, 19 (2d Cir. Nov. 19, 2001) (holding that the timely filing of a complaint later dismissed without prejudice does not suspend the ninety-day limitations period); Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that the timely filing of a complaint, later dismissed, does not toll or suspend the 90-day limitations period); Heard v. MTA Metro-North Commuter Railroad Co., No. 02 Civ. 7565, 2003 WL 22176008, at * 2 (S.D.N.Y. Sept. 22, 2003) (accord); see also Franklin v. Consolidated Edison

---

[6] Even assuming that the unsupported allegation of plaintiff's counsel that plaintiff did not receive the right-to-sue letter until July 3, 2007, (Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint [Plf. Opp.], p. 9), is sufficient to rebut the "three-day presumption of receipt," plaintiff was still required to file her ADA claims in this Court on or before October 1, 2007.

19

Co. of N.Y., Inc., No. 98 Civ. 2286, 1999 WL 796170, at * 4 n. 2 (S.D.N.Y. Sept. 30, 1999) ("When an action is dismissed without prejudice, it is treated as if it had never been filed. Thus, the general rule is that statutes of limitations are not tolled by bringing an action that is later * * * dismissed [without prejudice]."); but see Ocasio v. Fashion Institute of Technology, 9 Fed. Appx. 66, 68 2001 WL 514318, at * 2 (2d Cir. May 15, 2001) (finding that the plaintiff's filing of the first complaint, which was subsequently dismissed without prejudice, two (2) days prior to the expiration of the ninety-day period tolled the limitation period with two days to spare).[7]

Although plaintiff's complaint in this action was not filed within the ninety (90)-day period prescribed by the ADA, the Court must consider whether sufficient grounds exist to

---

[7] Even assuming that the ninety (90)-day limitation period was tolled during the pendency of the 2007 action, plaintiff had only four (4) days following the dismissal of that action within which to re-file her ADA claims prior to the expiration of the limitation period. Ocasio, 9 Fed. Appx. at 68 (holding that "[t]he 90-day filing deadline continued to apply to any other complaint [the plaintiff] might file asserting a cause of action containing the claims that [s]he had made to the EEOC.") Upon the dismissal of the 2007 action, the ninety (90)-day limitation period began to run again, and ran for the remaining four (4) days. See, e.g. Ocasio, 9 Fed. Appx. at 68. Although the separate judgment contemplated by Rule 58 of the Federal Rules of Civil Procedure was not timely entered, and was not actually entered until June 16, 2009, after the commencement of this action, Rule 58(c)(2) specifically provides that if a separate judgment is required, judgment is entered when the earlier of the following two (2) events occur: (A) the judgment is set out in a separate document; or (B) one hundred fifty (150) days have run from the entry of the final decision in the civil docket under Rule 79(a). Pursuant to Rule 58(c)(2), final judgment in the 2007 action was entered on May 22, 2009, one hundred fifty (150) days after entry of Judge Wexler's final order because: (1) the expiration of the one hundred fifty (150) day period occurred prior to the entry of the separate judgment; (2) Judge Wexler's December 16, 2008 order, entered on the docket on December 23, 2008, made a final determination intending to dispose of the 2007 action; (3) the 2007 action was actually closed immediately following Judge Wexler's order without objection; and (4) plaintiff commenced this action prior to the entry of the separate judgment in the 2007 action, thus indicating that she considered the 2007 action terminated prior to entry of the separate judgment document. Since plaintiff did not file this action until June 10, 2009, more than four (4) days after entry of the final judgment pursuant to Rule 58(c)(2)(B), i.e., May 22, 2009, her ADA claims are time-barred even assuming the ninety (90)-day period was tolled during the pendency of the 2007 action. See, e.g. id. at 68-69.

20

equitably toll the filing deadline. Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass, 333 F.3d at 80 (internal quotations and citations omitted); see also Veltri v. Building Service 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004) (holding that although limitations periods are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing, equitable tolling is an extraordinary measure that applies only when the plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected under the circumstances present). The court must consider whether the party seeking equitable tolling "(1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass, 333 F.3d at 80-81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)). Generally, equitable tolling has been allowed in the following circumstances: (1) where "a claimant has received inadequate notice" of the applicable time requirements or limitations period; (2) pending determination of a pending motion for the appointment of counsel; (3) where "the court had led the plaintiff to believe that she had done everything required of her," or (4) when some affirmative act or omission on the part of the defendant "lulled the plaintiff into inaction." Baldwin Co. Welcome Ctr. v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam) (citations omitted). In addition, equitable tolling has been found appropriate where the plaintiff filed and served defective papers prior to the expiration of the statutory time period or "was somehow prevented from learning of her cause of action within the statutory period." Veltri, 393 F.3d at 322-323.

21

The EEOC's right-to-sue letter explicitly informed plaintiff of the ninety (90)-day limitation period and the consequence of her failure to meet it; plaintiff was, at all times, represented by counsel and never sought the appointment of counsel; there is no indication that the Court ever led plaintiff to believe that the ninety (90)-day deadline would be, or would remain, tolled indefinitely until plaintiff re-commenced an action; and there is no allegation that any affirmative misconduct by defendants caused plaintiff to delay for almost six (6) months after Judge Wexler's final order dismissing the 2007 action without prejudice before she re-filed her action. There is nothing indicating that plaintiff acted diligently in attempting to re-file her action following the dismissal of the 2007 action; nor are the circumstances existing here the type of "rare and extraordinary circumstances" justifying equitable tolling of the ninety (90)-day period.

Since, whether or not the ninety (90)-day limitation period was tolled during the pendency of the 2007 action, plaintiff did not timely re-file her complaint prior to the expiration of the ninety (90)-day limitation period, and she has not established that the ninety (90)-day period should be equitably tolled, or otherwise equitably avoided, the branch of defendants' motion seeking dismissal of plaintiff's ADA claims is granted and those claims (first, second and fourth causes of action) are dismissed with prejudice as time-barred.[8]

D.      Rehabilitation Act Claim against the Utility Defendants

Unlike ADA claims, exhaustion of administrative remedies is not a condition precedent

_____

[8] In light of this determination, it is unnecessary to consider defendants' remaining contentions seeking dismissal of plaintiff's ADA claims on other grounds.

to commencing a discrimination claim based upon disability against a recipient of federal funding pursuant to Section 504 of the Rehabilitation Act. See, e.g. Rodriguez v. International Leadership Charter School, No. 08 Civ. 1012, 2009 WL 860622, at * 5 (S.D.N.Y. Mar. 30, 2009) (holding that although a plaintiff must exhaust administrative remedies under the Rehabilitation Act prior to commencing suit against a federal employer, there is no such exhaustion requirement with respect to claims under the Rehabilitation Act against a recipient of federal funding); Gilmore v. University of Rochester Strong Memorial Hospital Division, 384 F.Supp.2d 602, 609-610 n. 6 (W.D.N.Y. 2005) ("The Rehabilitation Act contains no explicit exhaustion requirement," with respect to claims against recipients of federal funding; see also Freed v. Consolidated Rail Corp., 201 F.3d 188, 194 (3d Cir. 2000) (holding that plaintiffs need not exhaust administrative remedies prior to commencing claims against recipients of federal funding pursuant to Section 504 of the Rehabilitation Act). Accordingly, plaintiff was not required to exhaust administrative remedies prior to commencing her Rehabilitation Act claim against the Utility defendants, as alleged recipients of federal funding.

To state a claim for discrimination based upon a failure to accommodate under the Rehabilitation Act, the plaintiff must allege: (1) that the defendant receives federal financial assistance and, thus, is subject to the statute; (2) that he or she is an individual with a disability within the meaning of the Rehabilitation Act; (3) that, with or without reasonable accommodation, he or she could perform the essential functions of the job; and (4) that the employer knew, or should have known, of his or her disability and failed to provide such reasonable accommodation. See Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997); Lyons v. Legal Aid Society, 68 F.3d 1512, 1515 (2d Cir. 1995). In her third cause of

23

action under the Rehabilitation Act, plaintiff alleges, *inter alia*: (1) that "[u]pon information and belief, Defendants are the recipients of federal financial funding," (Compl., ¶ 122); (2) that she is an individual with a disability within the meaning of the Rehabilitation Act, (Compl., ¶ 120); (3) that "with reasonable accommodation, [she] can perform the essential functions of her job," (Compl., ¶ 121); and (4) that defendants "have refused to make a reasonable accommodation to Plaintiff and/or have dispensed with the reasonable accommodation they had been providing," (Compl., ¶ 123). Although standing alone, such a "formulaic recitation of the elements of a cause of action," would be insufficient to state a claim for relief, Iqbal, 129 S.Ct. at 1949, there is sufficient factual amplification throughout the complaint to satisfy the liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Specifically, plaintiff alleges, *inter alia*: (1) that the spinal injury she sustained on April 15, 1999 "physically and mentally substantially impairs one or more major life activities, including, but not limited to, sitting, walking and performing physical activities, (Compl., ¶ 13); (2) that as a result of the pasterolumbar interbody spinal fusion she underwent on July 19, 2005, "she sustained a permanent physical impairment that substantially limited [her] ability to sit for long periods of time and perform numerous physical tasks that required bending or lifting," (Compl., ¶ 40); (3) that defendants "were aware and perceived [her] as being disabled at all relevant times," (Compl., ¶ 41); (4) that her disability did not "prevent[] her from performing the essential functions of her job as a Customer Service Representative," (Compl., ¶ 42); (5) that in or around September 2005, defendants provided her with a reasonable accommodation for her disability, i.e., seven (7) to ten (10) minute breaks four (4) times per day to stretch and manipulate her back, (Compl., ¶ 46), which time was not factored into her "availability status," (Compl., ¶ 63); (6) that

24

or and after September 18, 2006, Barrucco and/or Bishop advised her that they would no longer accommodate her back stretches and walks into her schedule, (Compl., ¶¶ 58, 67; see also ¶ 62); and (7) that as a result of defendants' failure to accommodate her disability, she was unable to meet her conformance level, resulting in disciplinary measures being taken against her, (Compl., ¶¶ 59, 68). The fact that plaintiff's allegation that the Utility defendants are recipients of federal funding is made "[u]pon information and belief" does not justify dismissal of plaintiff's Rehabilitation Act claim for failure to state a claim for relief. As the Second Circuit recently held:

> "The Twombly plausibility standard, which applies to all civil actions, * * *, does not prevent a plaintiff from 'pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant, * * * or where the belief is based on factual information that makes the inference of culpability plausible, * * *." (Citations omitted).

Arista Records, 2010 WL 1729107, at * 8. Whether or not any of the Utility defendants receives federal funding is a fact peculiarly within the possession and control of those defendants, which plaintiff is entitled to discern during discovery.

Thus, read as a whole, the complaint provides the Utility defendants with fair notice of what plaintiff's claim under the Rehabilitation Act is and the grounds upon which that claim rests. See Arista Records, 2010 WL 1729107, at * 8; Erickson, 551 U.S. 89, 127 S.Ct. at 2200. Therefore, plaintiff's complaint sufficiently states a plausible claim for relief under the Rehabilitation Act. See Twombly, 550 U.S. 544, 127 S.Ct. at 1974. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's Rehabilitation Act claim (third cause of action) is denied.

E.    NYSHRL Claim against the Individual Defendants

Since plaintiff's federal Rehabilitation Act claim remains, this Court retains supplemental jurisdiction over plaintiff's NYSHRL claim. 28 U.S.C. § 1367(a).

The NYSHRL makes it unlawful for an employer to discriminate on the basis of, *inter alia*, disability. See N.Y. Exec. Law § 296 ("Section 296"). An individual may be liable under the NYSHRL only if her or she is an "employer" under subsection (1) of Section 296, or if he she was an "aider or abettor" under subsection (6) of Section 296. See Lopes v. Caffe Centrale LLC, 548 F.Supp.2d 47, 54 (S.D.N.Y. 2008); Prince v. Madison Square Garden, 427 F.Supp.2d 372, 384 (S.D.N.Y. 2006). Plaintiff does not allege that any of the individual defendants or Doe defendants had any ownership interest in the Utility defendants, plaintiff's alleged employers, or the power to make personnel decisions on their own. See Stevens v. New York, ___ F.Supp.2d ___, 2009 WL 4277234, at * 7 (S.D.N.Y. Nov. 23, 2009); Patrowich v. Chemical Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984). Accordingly, the complaint is insufficient to state a plausible claim for relief under the NYSHRL against any of the individual defendants or Doe defendants as "employers" within the meaning of Section 296(1).

Nonetheless, Section 296(6) provides that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has held that individual liability may be imposed under the NYSHRL on a co-worker who "actually participates in the conduct giving rise to a discrimination claim," irrespective of whether that co-worker possessed the authority to do more than carry out personnel decisions made by others. Feingold v. New York, 366 F.3d 138, 157-158 (2d Cir. 2004) (internal quotations and citation

26

omitted). Since plaintiff does not allege that Buford, Gewert or any of the Doe defendants actually participated in any of the discriminatory or retaliatory conduct alleged in her complaint, she fails to state a NYSHRL claim against those defendants. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's NYSHRL claim against Burford, Gewert and the Doe defendants is granted to the extent that plaintiff's NYSHRL claim (fifth cause of action) is dismissed without prejudice as against those defendants. Plaintiff is granted leave to file an amended complaint re-asserting her NYSHRL claim against those defendants **within thirty (30) days from the date of this Order** or her NYSHRL claim will be deemed dismissed with prejudice as against Buford, Gewert and the Doe defendants.[9]

To the contrary, plaintiff's allegations that Barrucco and Bishop actually participated in the alleged harassment, discrimination and retaliation, and that L'Abbate and Robertson ignored her complaints about Barrucco and Bishop, are sufficient at the pleadings stage to state a plausible claim for "aiding and abetting" liability under the NYSHRL. Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's NYSHRL claim against Barrucco, Bishop, L'Abbate and Robertson is denied.

III. Conclusion

For the reasons stated herein: (1) the branch of defendants' motion seeking dismissal of plaintiff's ADA claims in their entirety as time-barred is granted and those claims (first, second

---

[9] As the NYSHRL claim is the only claim remaining against Buford, Gewert and the Doe defendants, plaintiff's failure to amend the complaint to correct the deficiencies in her NYSHRL claim as against those defendants within thirty (30) days will result in the complaint being dismissed in its entirety with prejudice as against those defendants.

27

and fourth causes of action) are dismissed with prejudice; (2) the branch of defendants' motion seeking dismissal of plaintiff's federal claims against the individual defendants and Doe defendants is granted and those claims (first through fourth causes of action) are dismissed with prejudice as against the individual defendants and Doe defendants; and (3) the branch of defendants' motion seeking dismissal of plaintiff's NYSHRL claim is granted to the extent that the NYSHRL claim (fifth cause of action) is dismissed without prejudice as against Buford, Gewert and the Doe defendants; and defendants' motion is otherwise denied.[10]

The parties are directed to appear before me in my courtroom located at 100 Federal Plaza, Courtroom 1010, Central Islip, New York 11722, on **June 18, 2010 at 11:30 a.m.**, with authority or persons with authority to resolve this action, for a settlement and/or scheduling conference. The parties are directed to engage in good faith settlement negotiations prior to the conference.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 13, 2010
Central Islip, N.Y.

---

[10] For the sake of simplicity, the only claims remaining in this action are: (1) plaintiff's claim against the Utility defendants under the Rehabilitation Act (third cause of action); and (2) plaintiff's NYSHRL claim (fifth cause of action) against all defendants except Buford, Gewert and the Doe defendants.